UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

CLARENCE MEEKINS,

Defendant.

Case No. 2:22-cr-00181-APG-EJY

**REPORT AND RECOMMENDATION**

RE: ECF Nos. 29, 30

Pending before the Court are Defendant's Motions to Dismiss counts two, three, four, five, six, and seven of the Indictment in which he is charged. ECF Nos. 29 and 30. The Court also has before it the government's Responses (ECF Nos. 31 and 32) and Defendant's Replies (ECF Nos. 33 and 34). For the reasons stated below, Defendant's Motions are denied.

**I. SUMMARY OF CHARGES AND ARGUMENTS.**

Defendant was charged in a seven count indictment on August 16, 2023. ECF No. 14. Counts two and four charge Defendant with "knowingly possess[ing] a machinegun," specifically "a machine gun conversion device" that enables "a Glock semi-automatic firearm" to fire as an "automatic weapon … shoot[ing] more than one shot, without manual reloading, by a single function of the trigger …." These counts are charged under 18 U.S.C. §§ 922(o) and 924(a)(2). *Id*. at 2-3. Counts three, five, six, and seven all charge Defendant with felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id*. at 2-5.

a. <u>Defendant's Motions To Dismiss</u>

*1. Counts Two and Four.*

Defendant seeks to dismiss counts two and four of the indictment arguing 18 U.S.C. § 922(o), which makes it illegal to "transfer or possess a machinegun," is unconstitutional. ECF No. 29 at 2. There is no dispute that the term "machinegun" is defined in 26 U.S.C. § 5845(b) as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." The definition of machinegun

"also include[s] … *any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun*, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." *Id*. (emphasis added).

Defendant admits he is charged with possessing "3D printed [and] privately made … machinegun conversion devices made in Nevada." ECF No. 29 at 2. However, because there is no allegation Defendant "transported the machineguns" he contends the "alleged offenses do not affect interstate commerce" and they are therefore unconstitutional. *Id*. Defendant contends "§ 922(o) is not a regulation of the use of the channels of interstate commence or the prohibition of the interstate transportation of a commodity through channels of commerce" and that "machinegun possession is not a regulation by which Congress … [seeks] to protect an instrumentality of … or a thing in interstate commerce." *Id*. at 2-3. Relying on *United States v. Lopez*, 514 U.S. 549 (1995), Plaintiff argues the offense of "mere possession" has nothing to do with commerce or "part of a larger regulation of economic activity" that would be undermined "unless intrastate activity were regulated." *Id*. at 3. To this end, Defendant says § 922(o) does not contain a jurisdictional element that would ensure the firearm possession at issue affects or impacts interstate commerce or future commercial activity. *Id*. at 3-4.[1] Defendant argues "his alleged possession falls within a subgroup of purely intrastate activity—3D printing clips—that is separate from what Congress may constitutionally control under § 922(o)." *Id*. at 4.

Defendant discusses the Ninth Circuit decision in *United States v. Stewart*, 348 F.3d 1132 (9th Cir. 2003), in which the court found § 922(o) as applied was unconstitutional. However, the 2003 *Stewart* decision was vacated after the U.S. Supreme Court issued its decision in *Gonzalez v. Raich*, 545 U.S. 1 (2005).[2]

---

[1] Citing *Lopez*, 514 U.S. at 561 and *Gonzalez v. Raich*, 545 U.S. 1, 23 (2005).

[2] The *Raich* Court found the Commerce Clause was properly applied to homegrown marijuana that was authorized by state law. *Id.* at 19. The *Raich* Court stated "the diversion of homegrown marijuana tends to frustrate the federal interest in eliminating commercial transactions in the interstate market in its entirety. … [T]he regulation is squarely within Congress' commerce power because production of the commodity meant for home consumption … has a substantial effect on supply and demand in the national market for that commodity." *Id*. at 19 (footnote omitted).

In *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006),[3] the Ninth Circuit discussed *Raich* at length, distinguished the case from *United States v. Lopez*, 514 U.S. 549,[4] and found Congress had a rational basis for concluding that, in the aggregate, possession of homemade machineguns could substantially affect interstate commence in machineguns. *Stewart II*, 451 F.3d at 1078 ("We therefore hold that Congress had a rational basis for concluding that in the aggregate, possession of homemade machineguns could substantially affect interstate commerce in machineguns. Homemade guns, even those with a unique design, can enter the interstate market and affect supply and demand.").

Defendant seeks to distinguish the Ninth Circuit *Stewart II* decision by arguing the defendant in *Stewart II* was selling gun part kits online that "could be readily … converted into an unlawful firearm," while Defendant's possession of 3D printed conversion devices could not exist without "advanced printing technology." ECF No. 29 at 5 *citing Stewart II*, 451 F.3d at 1072. Admitting *Stewart II* rejected an argument based on uniqueness and found "[t]o the extent that homemade machineguns function like commercial machineguns" they are "interchangeable," Defendant says "it is unknown whether all 3D" conversion devices "made from polymer" will "discharge large amounts of ammunition with a single trigger pull" or "be readily converted into a machine gun by consumers." *Id*. 5-6.

*2. Defendant's Motion to Dismiss Counts Three, Five, Six, and Seven.*

Defendant contends counts three, five, six, and seven must be dismissed "because the government cannot prove beyond a reasonable doubt that the … [privately manufactured firearms] were 'affecting commerce' and 'shipped and transported in interstate commerce.'" ECF No. 30 at 3 *citing* ECF No. 14. Defendant contends "undisputed facts" show the privately made ghost guns were printed and sold in Nevada. *Id*. Defendant distinguishes this case from "most cases" where

---

[3] The Ninth Circuit 2006 *United States v. Stewart* decision is referred to herein as "*Stewart II*." *Stewart II* was overruled on grounds other than those applicable to Defendant. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 9594-95 (2008).

[4] In *Lopez* the Supreme Court considered the validity of the Gun–Free School Zones Act of 1990, which is described in *Raich* as "a brief, single-subject statute making it a crime for an individual to possess a gun in a school zone." *Raich*, 545 U.S. at 23. "The Court noted that the statute was not an 'essential part[ ] of a larger regulation of economic activity[] in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Stewart II*, 451 F.3d at 1078 *citing*, *Raich*, 545 U.S. at 23 *quoting Lopez*, 514 U.S. at 561.

the guns at issue "have a past connection with another state or country" because the guns at issue were "never … shipped or transported outside of Nevada." *Id*. at 4. Defendant contends if a privately manufactured gun satisfies the "jurisdictional element" found in 18 U.S.C. § 922(g), then any "convicted felon with a gun would be guilty of a federal crime without proof of nexus." *Id*. *quoting United States v. Travisano*, 724 F.2d 341, 348 (2nd Cir. 1983).[5] Addressing the government's anticipated argument, Defendant says Fed. R. Crim. P. 12(b)(1) allows the Court to dismiss his "indictment before trial for insufficient evidence when the undisputed facts fail to support a required element" of the crime. *Id*. at 5 *citing United States v. Phillips*, 367 F.3d 846, 855 n.25 (9th Cir. 2004) (additional citations omitted).

b. The Government's Responses to Defendant's Motions to Dismiss.

*1. Response to Defendant's Motion to Dismiss Counts Two and Four.*

The government argues the Court's evaluation of Defendant's Motions to Dismiss "is bound by the four corners of the indictment" and facts alleged must be accepted as true. ECF No. 31 at 2 *citing United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). A defendant cannot challenge an indictment by contending the facts alleged "are not supported by adequate evidence." *Id*. at 3 *citing United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). The government says all the Court is empowered to do "is … to determine whether the indictment is facially valid, and not whether either party is entitled to judgment on the pleadings." *Id*. *citing United States v. Titterington*, 374 F.3d. 453, 457 (6th Cir. 2004). The government argues Defendant does not contest that he possessed a "machinegun," as that word is defined by statute, but instead argues 18 U.S.C. § 922(o) is unconstitutional as applied because it criminalizes possession of a 3D printed conversion device that does not affect commerce. *Id*. at 3-4.

The government contends that the guns were homemade has no impact on whether § 922(o) is constitutionally applied. *Id*. at 4. The government tells the Court to reject Defendant's arguments

---

[5] The Court notes that this Second Circuit decision was decided before *Raich*, and was based on finding that a possession and manufacture of a gun occurred within a single state. The *Raich* Court decision, discussed below, undermines the rationale on which the Second Circuit relied. Defendant cites a second case out of the District of Massachusetts, which the Court could not locate on Westlaw. The Court notes, however, Defendant cites the case for what the government could not prove. *See* ECF No. 30 at 4-5. At the motion to dismiss phase of proceedings, what the government can ultimately prove is not at issue.

because (1) it is "well established that … [courts] aggregate intra-state activities in as-applied Commerce Clause challenges" and (2) "Congress had a rational basis for concluding that, in the aggregate, possession of homemade machineguns, … even those with a unique design, can enter the interstate market and affect supply and demand." *Id*. *quoting Stewart II*, 451 F.3d at 1077-78. The government states every circuit addressing whether § 922(o) is constitutional has found it is. ECF No. 31 at 4 n.16.

Rejecting Defendant's challenge to § 922(o), the government cites Ninth Circuit precedent holding "homemade machineguns would and do affect the national market." *Id*. at 5 *citing Stewart II*, 451 F.3d at 1077. The government states the "machinegun possession ban fits within a larger scheme for the regulation of interstate commerce in firearms … designed to protect individual firearm ownership while supporting … law enforcement officials in their fight against crime and violence" irrespective of whether the firearms are freely transferrable, registered or banned. *Id*. at 5 *quoting id*. at 1076 (additional citations and quote marks omitted). The government rejects the defense argument that there is no evidence showing all 3D printed conversion devices made from polymer convert a semi-automatic firearm into a machinegun because what the government can prove at trial is not for the Court to decide on a Fed. R. Crim. P. 12 motions to dismiss.

*2. Response to Defendant's Motion to Dismiss Counts Three, Five, Six, and Seven.*

The government argues Defendant's Motion to Dismiss counts three, five, six, and seven fails because Defendant asks the Court to consider potential evidence and find that evidence is insufficient to support a felon in possession conviction. ECF No. 32 at 1. The government cites Ninth Circuit law requiring an indictment to only include "the charged offense using the words of the criminal statute itself," and does not need to include "the specific means by which the defendant violated the statute." *Id*. at 3 *citing United States v. Haines*, Case No. 2:16-cr-00137-JAD-GWF, 2017 WL 923921, at *1 (D. Nev. Mar. 8, 2017) and *United States v. Award*, 551 F.3d 930, 935 (9th Cir. 2009). The Court may not consider evidence not recited in the indictment. *Id*. at 4 *citing United States v. Kelly*, 874 F.3d 1037, 1047 (9th Cir. 2017); *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *Jensen*, *supra*, 93 F.3d at 669.

After quoting the statute and allegations in the indictment, the government states that the plain terms of the indictment charge Defendant with each element of the crime providing additional factual detail not required. *Id*. at 4-5. The government cites several decisions issued by the District of Nevada in which Magistrate Judges rejected arguments similar to those made by Defendant in this case. *Id*. at 6-7.[6] The government emphasizes that Ninth Circuit precedent does not require a recitation of facts demonstrating how interstate commence was affected or impacted by conduct alleged in an indictment. *Id*. at 7 (citations omitted).

The government concludes that because "a motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence," Defendant's argument regarding the government's lack of proof is meritless at the motion to dismiss proceeding stage. *Id*. at 8 *citing Jensen*, 93 F.3d at 669 (additional citations and internal brackets omitted). "[T]he court may not invade the province of" the fact finder. *U.S. v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993). Defendant's Motion asserts the privately made firearms were 3D printed and sold only in Nevada; but this is evidence outside of the indictment on which the Court cannot rely when deciding whether to dismiss charges against Defendant. ECF No. 32 at 8-9 (internal citations omitted). The government says all it must demonstrate at this stage is possession otherwise affecting interstate or foreign commerce. *Id*. at 9 *citing United States v. Bass*, 404 U.S. 336 (1971).

c. <u>Defendant's Replies</u>.

Defendant's Reply reiterates that counts two and four must be dismissed because "Congress cannot regulate possession of a machinegun under the Commerce Clause." ECF No. 33 at 2 *citing Lopez*, 514 U.S. 549 (no pin cite provided). Defendant contends possession of a machinegun "is not an economic activity that substantially affects interstate commerce." *Id*. *citing id*. Defendant argues Ninth Circuit precedence demonstrates "there is nothing inherently economic or commercial about mere possession of an object," which Defendant asks the Court to infer, but does not state, is all that Defendant ever did—that is, possess a machinegun. *Id*. at 3 *citing Stewart II*, 451 F.3d at 1073.

---

[6] The government cites *United States v. Mosz*, Case No. 2:22-cr-00103-ART-NJK, ECF No. 43 (Jan. 3. 2023); *United States v. Bell*, Case No. 15-cr-000054, 2016 WL 11449020, at *2 (D. Nev. Mar. 22, 2016); and, *United States v. Nelson*, Case No. 20-cr-00195-APG-EJY, 2022 WL 625346, at *3 (D. Nev. Feb. 11, 2022).

Defendant also argues that his alleged possession of a privately made polymer 3D conversion device "falls within a subgroup of purely intrastate activities that can easily be cordoned off from those Congress may constitutionally control." *Id. citing Stewart II*, 451 F.3d at 1074. Defendant concludes privately made, polymer 3D printed conversion devices will not "bleed into the interstate market and affect supply and demand given the material and special technology used to make them." *Id.*

With respect to dismissal of counts three, five, six and "part of seven," Defendant argues the government does not allege the required jurisdictional element. ECF No. 34 at 2. Defendant says that because he allegedly possessed ghost guns, the indictment does not state a federal offense and fails to provide him with the required notice as there is no allegation that the firearms affected interstate commerce. *Id.* Defendant further argues the government does not dispute that the guns were made and sold in Nevada. *Id.* at 5 *citing* ECF No. 1. Defendant contends the "four corners of the indictment reveal the government must prove the alleged firearms were transported in interstate commerce." *Id.* Returning to the theme of "undisputed facts," Defendant says "as a matter of law" the government cannot prove "shipment or transport in interstate commerce." *Id.* (citation omitted). Finally, Defendant introduces a new request in his Reply suggesting if dismissal is denied the Court should order the government to file a bill of particulars. *Id.* at 6-7.

## II. <u>DISCUSSION</u>

### a. <u>The Legal Standard Applicable to a Motion to Dismiss Under Fed. R. Crim. P. 12</u>.

Well settled law hold "an indictment sought under a statute that is unconstitutional on its face or as applied" will be dismissed. *United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007); *citing Lopez*, 524 U.S. 549. District Courts are not empowered to dismiss a criminal complaint pretrial based on sufficiency of the evidence. *Jensen*, 93 F.3d at 669 ("A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence. … [And a] motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence") (internal citations omitted). *See also Boren*, 278 F.3d at 914; *United States v. Rebetter*, Case No. 217-cr-00228-KJD-NJK, 2021 WL 5415331, at *1 (D. Nev. Nov. 19,

2021). When a defendant's arguments challenge the government's ability to prove his actions affected commerce, the motion to dismiss is premature. *Nukida*, 8 F.3d at 669.

The proper inquiry under Rule 12 is whether the charging document "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy." *United States v. White*, Case No: 2:15-cr-00029-GMN-VCF, 2015 WL 5853226, at *2 (D. Nev. Oct. 7, 2015) (citation omitted). "When deciding a pretrial motion brought under Rule 12," the court merely decides whether the indictment is facially valid, "not whether either party is entitled to judgment on the pleadings." *Id*. at *3. Even conclusory allegations in an indictment are sufficient under Rule 12. *Id.* at *2. "When examining a motion to dismiss under Rule 12, the court must take the indictment's allegations as true … [and] [i]f the four corners of the indictment are sufficient, 'the district court is bound by the ... indictment.'" *Id.* (internal citations omitted).

b. 18 U.S.C. § 922(o) is Constitutional and Defendant's Motion to Dismiss Counts Two and Four Should be Denied.

Under 18 U.S.C. § 922(o) it is "unlawful for any person to transfer or possess a machinegun." A "machinegun" is defined in pertinent part as including "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845(b). Defendant argues 18 U.S.C. § 922(o) is unconstitutional "because machinegun conversion devices d[o] … not affect commerce" and that the government fails to allege Defendant "transported the machineguns at issue." Defendant conclude the offenses alleged under counts two and four do "not affect interstate commerce" and are unconstitutional.

The Court disagrees. The decision in *Stewart II* establishes "a homemade machinegun substantially affected commerce."[7] *Stewart II*, 451 F.3d at 1073. Although the court in *Stewart II*

---

[7] Congress has the power to "regulate economic activity under its commerce powers" in three ways: "(1) 'the use of the channels of interstate commerce,' (2) 'the instrumentalities of interstate commerce' and (3) 'those activities having a substantial relation to interstate commerce.'" *Stewart II*, 451 F.3d at 1073 *quoting Lopez*, 514 U.S. at 558-59. *See also Lopez*, 514 U.S. at 553 *quoting Gibbons v. Ogden*, 9 Wheat. 1, 196 (1824) ("[t]he commerce power 'is the power to regulate; that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in

stated owning a machinegun "without more" was not economic in nature, the court also repeated well settled law "that Congress may regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce." *Id*. at 1074 *citing Raich*, 545 U.S. at 17 (internal citations and quote marks omitted). The Ninth Circuit stated "Congress can regulate purely intrastate activity that is not itself commercial, in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market." *Id*. at 1075 *citing id.* at 18 (internal citation and quote marks omitted). Citing *Raich*, the court in *Stewart II* found the following: (1) a homemade product can quite easily leak into an interstate market; (2) the fact that a defendant does not affect interstate commerce is of "no moment" because "when Congress makes an interstate omelet, it is entitled to break a few intrastate eggs"; (3) "prohibiting the intra-state possession or manufacture of an article of commerce is a rational … means of regulating commerce in that product"; (4) "the machinegun possession ban fits within a larger scheme for the regulation of interstate commerce in firearms"; and (5) the proper focus for the Court is not Defendant "and his unique homemade" conversion device, "but all homemade" conversion devices, turning an ordinary gun into a machinegun, made intrastate. *Id.* at 1075-1077. The Ninth Circuit made clear the inquiry is not whether the activity at issue "*actually* affected interstate commerce … [but] whether Congress had a rational basis for so concluding." *Id*. at 1077 (emphasis in original).

Decisions from the Ninth Circuit are legion with respect to whether a homemade device could enter the interstate market and affect supply and demand. In *U.S. v. Henry*, the defendants argued the Commerce Clause did not provide Congress "the power to prohibit possession of homemade machine guns." 688 F.3d 637, 640-41 (9th Cir. 2012). Looking to *Stewart II*, and "[e]very other circuit that has reached the issue," the Ninth Circuit stated "§ 922(o) is constitutional under the Commerce Clause." *Id*. at 641 and n.4 (collecting cases). In 2007, the Ninth Circuit considered a challenge to whether 18 U.S.C. §§ 922(g)(5)(A) and (g)(5)(B), prohibiting possession of a firearm, as applied to the defendant was unconstitutional under the Commerce Clause. *U.S. v.*

congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution.'").

*Latu*, 479 F.3d 1153, 1154-55 (9th Cir. 2007). The court stated "§ 922(g), both facially and as applied" is constitutional. *Id*. at 1156. In 2006, the Ninth Circuit considered a constitutional challenge to a conviction for possession of a "firearm equipped with a" homemade silencer defendant said had "not travel[ed] in interstate commerce." *U.S. v. Taylor*, 204 Fed.Appx. 94 (9th Cir. 2006). The court found the defendant's "prosecution for possession of a pistol with a homemade silencer, premised on an underlying drug trafficking offense, did not violate the Commerce Clause." *Id*. *See also United States v. Rambo*, 74 F.3d 948, 952 (9th Cir. 1996) (upholding 18 U.S.C. § 922(o) even without a jurisdictional element on the ground that by prohibiting machinegun possession, Congress is effectively regulating interstate trafficking in machineguns and is therefore acting within its authority under the Commerce Clause).

Based on the above, the Court finds Congress has the authority under the Commerce Clause to prohibit the possession of a homemade conversion device (even if 3D printed) that turns a firearm that is not a machine gun into a machine gun. 18 U.S.C. § 922(o); *Stewart II*, 451 F.3d at 1078. ("Congress had a rational basis for concluding that in the aggregate, possession of homemade machineguns could substantially affect interstate commerce in machineguns").

Defendant's argument that there is a question "whether all 3D printed clips [(conversion devices)] made from polymer … would effectively discharge large amounts of ammunition with a single trigger pull" fails because this is neither an undisputed fact nor a question of law the Court properly addresses when deciding the instant Motion to Dismiss under Rule 12. The issue of whether Defendant produced a conversion device that turns a firearm into a machine gun is not segregable from the evidence to be presented at trial. When "the pretrial claim is intertwined with evidence concerning the alleged offense, the motion [to dismiss] falls within the province of the ultimate finder of fact and must be deferred." *Nukida*, 8 F.3d at 669 (internal citation omitted). Regarding Defendant's argument there is no evidence of shipment or transport in interstate commerce, this is not an element the government must prove to establish guilt under § 922(o). *Stewart II*, 451 F.3d at 1075-1077.

c. Defendant's Motion to Dismiss Counts Three, Five, Six, and Seven Should be Denied Because Defendant's Arguments Are Contrary to Law.

Defendant's Motion to Dismiss counts three, five, six, and seven fails because "the government cannot prove beyond a reasonable doubt" the privately made firearms at issue affected commerce and were shipped and transported in interstate commerce. ECF No. 30 at 3. To state a charge under 18 U.S.C. § 922(g)(1), which is the only statute on which Defendant moves, the government must allege the (1) defendant was a convicted felon; (2) defendant had knowledge of his convicted felon status; (3) defendant was in knowing possession of a firearm; and (4) the firearm was in or affecting interstate commerce. *United States v. Dillard*, Case No. 2:09-cr-00057-JAD-GWF, 2020 WL 2199614, at *1 (D. Nev. May 6, 2020) (citation omitted). Each of the counts asserted by the government allege Defendant is a convicted felon, Defendant knew he was a convicted felon, Defendant knowingly possessed a firearm, the firearm affected commerce, and the firearm was shipped and transported in interstate commerce. ECF No. 14 at 2-5. The Court is bound by the allegations in the indictment, which it presumes are true. *White*, 2015 WL 5853226, at *2. The Court finds each essential element of § 922(g)(1) is alleged and the allegations are sufficient to ensure Defendant can, in the future, rely on the allegations as a bar to double jeopardy. *Id*. The Court notes, even when allegations are conclusory, it cannot consider the strength or sufficiency of evidence when deciding a motion to dismiss. *Jensen*, 93 F.3d at 669. The sufficiency of an indictment is determined by "whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the government can prove its case." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (internal citation omitted). *See also United States v. Gondinez-Rabadan*, 289 F.3d 690, 633 (9th Cir. 2002) ("test of the sufficiency of the indictment is ... whether it conforms to minimal constitutional standards"). While the government will have to prove the guns at issue affected commerce, the Court cannot hold the content of the indictment to the level of proof required at trial. *Nukida*, 8 F.3d at 669; *Jensen*, 93 F.3d at 669.

**IV. Recommendation**

IT IS HEREBY RECOMMENDED that Defendant's Motion to Dismiss Counts Two and Four (ECF No. 29) be DENIED.

IT IS FURTHER RECOMMENDED that Defendant's Motion to Dismiss Counts Three, Five, Six, and Seven (ECF No. 30) be DENIED.

Dated this 9th day of May, 2023.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).